IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA FRANCIS,<br>      Plaintiff | :<br>:<br>: |
| v. | :   CIVIL NO. 1:12-CV-842 |
| JACK LOTWICK and<br>DAUPHIN COUNTY,<br>      Defendants | :<br>:<br>:<br>: |

*M E M O R A N D U M*

*I.      Introduction*

In this case, Plaintiff Tina Francis brings claims of retaliatory discharge against Defendants Jack Lotwick and Dauphin County. Presently before the court is Defendants' motion to dismiss the complaint (Doc. 4). Defendants seek to dismiss Counts I and II of the complaint on the basis that they fail to state a claim upon which relief can be granted. Defendants also argue that, if the court dismisses the First Amendment claims in Counts I and II, then we will no longer have jurisdiction over the state law claim set forth in Count III, and we should dismiss Count III without prejudice, permitting Plaintiff to re-file it in state court. Plaintiff has filed a brief in opposition (Doc. 10) to the motion to dismiss, and Defendants have filed a reply brief (Doc. 11). The motion is now ripe for our review.

*II.      Factual Background and Procedural History*

The following facts are alleged in Plaintiff's complaint.

Plaintiff was employed by Defendant Dauphin County as an administrative assistant in the Sheriff's Department. In May of 2011, Plaintiff's doctor diagnosed her with carpal tunnel syndrome and advised her to pursue a workers' compensation claim, because the condition was probably caused by her work-related activities.

Shortly thereafter, Plaintiff spoke to her supervisor, Shelley Ruhl, about pursuing a workers' compensation claim. Ruhl opined that Plaintiff was not stating a legitimate claim, but Ruhl also suggested that Plaintiff discuss the situation with Donna Miller, a Dauphin County risk management employee. Plaintiff did so on June 2.

Also on June 2, Plaintiff submitted to a medical evaluation at Worknet, a workers' compensation evaluator. Plaintiff was referred to Dr. Timothy Naidu for an assessment for surgery. On June 15, Dr. Naidu advised Plaintiff to have surgery as soon as possible, and he advised her that she would need to be out of work for six weeks for surgery and recovery.

Plaintiff advised both Ruhl and Defendant Jack Lotwick that she would need to take leave for six weeks for this purpose. Ruhl reacted negatively, calling the news "ridiculous" and stating that Plaintiff could "come back in a few days," not six weeks. Lotwick's reaction was similar. Plaintiff alleges that Lotwick said, "[i]t's not a six-week claim," accused Plaintiff of "milking the time," and directed a subordinate employee to tell Plaintiff that "it's not a claim" and that "we'll see that you can come back." Furthermore, the complaint alleges that when Plaintiff repeated the doctor's instructions, both Ruhl and Lotwick responded, "[w]e'll see about that."

In light of the fact that Plaintiff expected to be out of the office for several weeks, Ruhl requested that Plaintiff give up her log-in information to the computer she used in the office. Plaintiff declined to give up her computer log-in information, because her computer had access to sensitive, non-public information through the JNET criminal information system. Some other employees in the office, including Ruhl, were not authorized to access JNET information at Plaintiff's clearance level. Plaintiff's JNET training had emphasized the importance of never sharing a JNET password with another person. Accordingly, Plaintiff did not give Ruhl her computer

password, in order to avoid compromising her computer's exclusive access to JNET or being held responsible for abuse of JNET privileges.

On June 17, 2011, Plaintiff had corrective surgery for carpal tunnel in one of her arms. On or about July 1, 2011, Plaintiff attempted to log in to her work email account from home and discovered that her password had been changed. Plaintiff alleges that Ruhl instructed the IT Department to issue a new password for Plaintiff's account. At Plaintiff's request, her password was later changed back.

On July 5, 2011, while she was still on leave, Plaintiff visited the office to give a birthday gift to a fellow employee and to print out paperwork for a second workers' compensation claim. According to the complaint, Plaintiff was experiencing similar pain in her other hand, and Plaintiff intended to seek a doctor's evaluation. While Plaintiff was in the office, her computer was logged in under her name, but another employee assisted Plaintiff with typing. Plaintiff completed the paperwork, submitted it to Ruhl, and left the office.

Plaintiff returned to work on August 1, 2011. On August 10, she was notified that an administrative investigation had been launched against her for alleged misuse of technical equipment. Specifically, she was accused of looking up private information on JNET without authorization on July 5, 2011. Plaintiff denied the alleged misuse of her JNET clearance.

On November 4, 2011, Plaintiff's employment was terminated. A week later, Plaintiff contacted the JNET administrators, who informed her that no investigation of her JNET account had been done through JNET. Therefore, Plaintiff alleges that Defendants could not have obtained information to substantiate their claim of misuse. Plaintiff contends that she was fired on a pretextual basis.

Plaintiff filed the instant case on May 4, 2012. On July 6, 2012, Defendants moved to dismiss the complaint. As noted above, Defendants argue that the court should dismiss Counts I and II for failure to state a claim, and then dismiss Count III for lack of jurisdiction, without prejudice to Plaintiff's right to re-file Count III in state court. Defendants' motion is now fully briefed and ripe for our review.

*III.*     *Legal Standard*

When reviewing a motion to dismiss for failure to state a claim, under Rule 12(b)(6), we must accept all of Plaintiff's factual allegations as true, construe them in the light most favorable to her, and determine if, "under any reasonable reading of the pleading, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). Our analysis consists of two parts: first, separating the "legal elements of a claim" from the factual allegations, and second, determining whether the factual allegations "show" a plausible entitlement to relief. Id. at 210-11.

*III.*     *Discussion*

   *A.     Counts I and II*

In Counts I and II, Plaintiff raises First Amendment retaliation claims. Count I invokes Plaintiff's right of free speech. According to Plaintiff, she engaged in protected speech by applying for workers' compensation benefits, and the subsequent termination of her employment was a retaliatory reaction to her protected conduct. Count II raises a similar retaliation claim under the petition clause of the First Amendment. Specifically, Plaintiff alleges that her submission of a workers' compensation claim was protected by her right to petition the government, and that

Defendants fired her in retaliation for her protected conduct. Defendants contend that both Counts I and II fail to state a claim upon which relief can be granted.

A cognizable retaliation claim must establish the following three elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Our analysis will focus on the first element—protected conduct.[1]

One prerequisite to Plaintiff's conduct being protected, under either the speech clause or the petition clause of the First Amendment, is that her conduct must relate to a matter of public concern. See Borough of Duryea v. Guarnieri, ___ U.S. ___, 131 S. Ct. 2488, 2500 (2011). In Guarnieri, the Supreme Court specifically noted that the First Amendment does not "transform everyday employment disputes into matters for constitutional litigation in the federal courts." 131 S. Ct. at 2501. Thus, a subject matter of public concern is essential, regardless of whether the conduct at issue is speech or petitioning conduct.

This "public concern" requirement is the key issue in the pending motion to dismiss.[2] According to Defendants, Plaintiff fails to allege that she was acting as a

---

[1] Accepting the factual allegations of Plaintiff's complaint as true, as we must at this juncture, we conclude that Plaintiff has satisfied the second and third elements of a retaliation claim—retaliatory action and a causal link. Indeed, Defendants do not argue to the contrary. They argue only that Plaintiff's conduct is not constitutionally protected. Hence, no further discussion of the second or third element is necessary.

[2] Defendants also contend that Count II should be dismissed because filing a claim for workers' compensation benefits does not constitute a constitutionally protected petition for redress of grievances, and that Count I should be dismissed because communications made up the chain of command are not protected speech. Our analysis of the "public concern" issue, which applies to both Counts I and II, renders it unnecessary to address the merits of these arguments.

citizen on a matter of public concern, and therefore, her conduct is not protected under either the speech clause or the petition clause. Plaintiff contends that her actions are protected under the First Amendment. According to Plaintiff, applying for workers' compensation benefits qualifies as speech and petitioning activity on a matter of public concern because the Pennsylvania Supreme Court has stated that "termination of an at-will employee for filing a workers' compensation claim violates <u>public</u> policy." <u>Shick v. Shirey</u>, 552 Pa. 590, 603, 716 A.2d 1231, 1237 (Pa. 1998) (emphasis added by Plaintiff). Plaintiff insists that action protected by "public" policy must be a matter of "public" concern entitled to First Amendment protection.

      We do not agree with Plaintiff's argument, and we find her reliance on <u>Shick</u> to be misplaced. When the <u>Shick</u> court found that it "violates public policy" for an employer to terminate an employee in retaliation for seeking workers' compensation benefits, the court was simply supporting its conclusion that the employer's retaliatory reaction is an actionable wrong under Pennsylvania law.[3] Hence, if we assume that Defendants terminated Plaintiff's employment in retaliation for seeking workers' compensation benefits, then <u>Shick</u> would compel us to conclude that Defendants' actions are contrary to the public policy of Pennsylvania, and that Defendants are liable for an actionable wrong in Pennsylvania. However, nothing in <u>Shick</u> compels us to conclude that Plaintiff's underlying actions—applying for workers' compensation benefits—qualify as speech or petitioning conduct on a matter of public concern, within the protection of the First Amendment. The holding of <u>Shick</u> neither addresses nor controls this issue.

---

[3] Indeed, in the <u>Shick</u> court's own words, the central holding of <u>Shick</u> was simply that "an at-will employee who alleges retaliatory discharge for the filing of a workers' compensation claim has stated a cause of action for which relief may be granted under the law of this Commonwealth." 552 Pa. at 592, 716 A.2d at 1232.

Although the Shick court did not address the question presently before us, other courts have analyzed whether applying for workers' compensation is conduct relating to a matter of public concern, and concluded that it is not. See, e.g., Roberts v. Ferman, No. 09-4895, 2011 WL 2937398 at *14 (E.D. Pa. July 20, 2011); Cruz-Smith v. Sinclair, No. 10-3609, 2011 WL 3652462 at *5 (E.D. Pa. Aug. 19, 2011). We find the reasoning of these cases persuasive. We conclude that Plaintiff has failed to show that she engaged in protected speech or petitioning conduct relating to a matter of public concern, and therefore, we will dismiss her First Amendment claims.

### B. *Count III*

Count III sets forth a retaliation claim arising under Pennsylvania state law. Under Pennsylvania law, the exercise of one's rights under the Workers Compensation Act is protected conduct, for which one's employment cannot be terminated. Plaintiff alleges that Defendants violated her rights by engaging in such retaliatory termination, contrary to Pennsylvania's public policy.

There is no dispute that Count III arises solely under state law, nor does either party argue that we should retain jurisdiction over the claim in Count III after dismissing Counts I and II. Although Plaintiff opposes dismissal of her federal claims, she does not ask this court to retain jurisdiction over Count III alone. Therefore, without further discussion, we will dismiss Count III, without prejudice to Plaintiff re-filing her state law claim in state court.

*IV.     Conclusion*

      For the reasons set forth above, we will grant Defendants' motion to dismiss.  We will issue an appropriate order.

                                          /s/ William W. Caldwell
                                          William W. Caldwell
                                          United States District Judge

Date: October 4, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA FRANCIS,<br>    Plaintiff | :<br>:<br>: |
| v. | : CIVIL NO. 1:12-CV-842 |
| JACK LOTWICK and<br>DAUPHIN COUNTY,<br>    Defendants | :<br>:<br>:<br>: |

*O R D E R*

AND NOW, this 4th day of October, 2012, upon consideration of Defendants' motion (Doc. 4) to dismiss Plaintiff's Complaint, and for the reasons stated in the foregoing memorandum, it is ORDERED that said motion is GRANTED. The Clerk of Court is directed to close this case.

                                                /s/ William W. Caldwell
                                              William W. Caldwell
                                              United States District Judge